UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| WILL MCGINNIS,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRAL KENTUCKY<br>MANAGEMENT SERVICES,<br><br>    Defendant. | No. 5:19-cv-53-REW<br><br><br><br>OPINION & ORDER |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

In November 2018, *pro se* Plaintiff Will McGinnis sued Central Kentucky Management Services ("CKMS"), a billing agency for University of Kentucky HealthCare, in Fayette Circuit Court. DE 1-3 at 2 (State Court Record). After various procedural steps (including a complaint amendment, removal, and a rejected remand request), CKMS now seeks dismissal of McGinnis's operative pleading. DE 19 (Motion); *see also* DE 1-2 (Amended Complaint). The motion is fully briefed and stands ripe for review. *See* DE 21 (Response); DE 22 (Reply); DE 24 (Unauthorized Surreply). Principally because immunity bars all of McGinnis's claims, but also for several other reasons, the Court grants CKMS's motion.

I.  **STANDARD OF REVIEW**[1]

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a

---

[1] Preliminarily, the Court addresses McGinnis's stated preference for a different judge. DE 24 at ¶ 4. McGinnis notes that the undersigned (like Plaintiff) attended the University of Kentucky ("UK"). *Id.* Plaintiff indicates concern that he is less likely to receive a "fair ruling" from this Court and suggests that the undersigned might favor UK or its general counsel. *Id.* McGinnis has not formally moved for recusal. *Id.* Further, McGinnis communicated his preference for reassignment in a surreply that he did not seek or receive permission for filing. *See Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014). Thus, no formal recusal request is, on this record, properly before the Court.

Nevertheless, the Court notes as follows: Relevant to McGinnis's allegations, 28 U.S.C. § 455 requires recusal in proceedings in which a judge's "impartiality might reasonably be questioned[,]" or where the judge "has a personal bias or prejudice concerning a party[.]" 28 U.S.C. §§ 455(a) & (b)(1). However, on this record, no "reasonable person with knowledge of all the facts would conclude that the [undersigned]'s impartiality . . . might reasonably be questioned." *Deuer Mfg., Inc. v. Kent Products, Inc*., 760 F. Supp. 609, 611 (E.D. Mich. 1989). McGinnis provides nothing more than conclusory assertions as grounds for his "concern[ ]" regarding the undersigned's impartiality. The Court, under the applicable standards and despite Plaintiff's speculation, sees no basis for recusal. *See, e.g.*, *Harris v. Morris*, No. 17-1373, 2017 WL 8776683, at *2 (6th Cir. Oct. 26, 2017) (affirming denial of recusal motion based on "unsupported allegations about some connection between the governor—who is not a defendant in this case—and the judge, . . . [a] prior judicial misconduct complaint, and [ ] general and unsubstantiated statements about racial bias."); *Ragozzine v. Youngstown State Univ.*, 783 F.3d 1077, 1079 (6th Cir. 2015) ("A relationship with a tenured member of a university faculty, without more, would not necessarily cause a reasonable person to question a judge's impartiality regarding all matters involving the university."); *Easley v. Univ. of Michigan Bd. of Regents*, 906 F.2d 1143, 1147 (6th Cir. 1990) ("Without more, the amicable feelings Judge Feikens undoubtedly has for his alma mater, The University of Michigan, fail to demonstrate a sufficient basis for his recusal. *See Brody v. President & Fellows of Harvard College*, 664 F.2d 10, 11 (1st Cir. 1981)."). The undersigned does not have any relationship with Mr. Thro and treats UK, and its apparatus, like any other party, ruling against or for it on the law and the merits. *See, e.g., Mullins v. Kyrkanides*, No. 5:17-CV-319-REW-CJS, 2018 WL 4688727, at *12 (E.D. Ky. Sept. 28, 2018) (denying UK College of Dentistry Dean's motion for summary judgment and finding: "It will be for the jury to decide whether Kyrkanides malevolently orchestrated the end of the Mullins era at UK, or whether the Dean benignly stood by").

formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys*, 684 F.3d at 608. Yet, courts need not accept "legal conclusion[s] couched as [ ] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[ ] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low."). Further, when testing the sufficiency of *pro se* pleadings, courts apply forgiving rigor, liberally construing legal claims in the plaintiff's favor. *Davis v. Prison Health Servs.*, 769 F.3d 433, 437-38 (6th Cir. 2012). Nonetheless, the liberal construction obligation has limits. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Courts will not "conjure allegations on a litigant's behalf." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001); *see also Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("Pro se parties must still brief the issues advanced with some effort at developed argumentation.").

Generally, "matters outside of the pleadings are not to be considered by a court in ruling on a . . . motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). However, the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted).

Additionally, the Court rejects Plaintiff's contention that "the rules of procedures [sic] clearly say a judge will not dismiss at this stage unless it is IMPOSSIBLE for the defendant [sic] to win at trial." DE 21 at ¶ 3. As the Sixth Circuit has explained:

> The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson* . . . that had prevailed for the last few decades. [*Iqbal*; *Twombly*.] *Conley* itself had reflected the change away from "code pleading" to "notice pleading," and the standard it announced was designed to screen out only those cases that patently had no theoretical hope of success.
> . . .
> The Court has now explained, however, that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Indeed, while this new *Iqbal*/*Twombly* standard screens out the "little green men" cases just as *Conley* did, it is designed to also screen out cases that, while not utterly impossible, are "implausible."

*Courie v. Alcoa Wheel & Forged Prod.*, 577 F.3d 625, 629–30 (6th Cir. 2009) (footnote omitted).

## II. ANALYSIS

McGinnis brings three claims against CKMS: "fraudulent concealment and fraudulent over-billing" (Count One); a 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment (Count Two); and "conspiracy to over-bill and conspiracy to fraudulently conceal material facts in order to gain financially" (Count Three). DE 1-2 at 4–7. The Court finds that sovereign immunity bars all three claims. Further, Plaintiff's § 1983 claim does not pass *Twombly/Iqbal* muster (and is time barred). Accordingly, the Court will grant Defendant's motion.

*Failure to State a Claim*

The defense contends that Plaintiff's claims hinge entirely on alleged conduct of non-parties, UK or the Kentucky Department of Revenue ("DOR"). DE 19 at 7. Thus, per Defendant, Plaintiff has sued the wrong entity and fails to state any claim against CKMS. The Court partly agrees.

4

A viable § 1983 claim requires plausible allegations of: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). Though it is unclear whether McGinnis alleges a substantive or procedural theory, it is apparent that Plaintiff's due process claim principally challenges (1) DOR collections of UK medical bills and (2) the University's review process as to McGinnis's denied application for "UK's Financial Assistance Program (FAP)." DE 1-2 at 6 & 10 (July 30, 2014, Letter from UK's Office of Legal Counsel); *see also* Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). McGinnis does not claim that CKMS is, itself, the allegedly unconstitutional medical provider or collector or that it conducted the subject hearing. Obviously, Plaintiff has not sued (here) either the DOR or UK. Nor does Plaintiff allege any theory that could justify deeming CKMS vicariously liable for alleged University or DOR wrongs.[2] Stated otherwise, Plaintiff identifies no mechanism for holding Defendant liable for any other entity's purported misdeeds.

Plaintiff's only direct claim against the named Defendant is that "CKMS is not entitled to use the [DOR] as a collection agency." DE 1-2 at 6. This single-sentence allegation does not amount to a plausible § 1983 claim. McGinnis, citing no federal law and relying on a Fayette Circuit Court ruling against UK, apparently bases his due process claim on state law. *See id.* at 1. While procedural due process protections apply to rights "derived from state law rather than the Constitution, substantive due process rights are created only by the [federal] Constitution." *Charles v. Baesler*, 910 F.2d 1349, 1354 (6th Cir. 1990) (quoting *Regents of the Univ. of Mich. v.*

---

[2] Vicarious liability is a defined legal doctrine applicable only under specific circumstances, none of which are, here, pleaded.

5

*Ewing*, 106 S. Ct. 507, 515 (1985) (Powell, J., concurring)); *Young v. Twp. of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) ("[A]reas in which substantive rights are created only by state law . . . are not subject to substantive due process protection under the Due Process Clause[.]"). Thus, assuming *arguendo* that the state created a right akin to what McGinnis alleges, he needed to viably plead a deprivation of same without an "*opportunity* to be heard at a meaningful time and a meaningful manner" on this topic. *Mathews v. Eldridge*, 96 S. Ct. 893, 902 (1976).

McGinnis offers no such claim, certainly not one adequately alleged. Indeed, as the pleading makes clear, Plaintiff was given a hearing and did not then challenge the validity of CKMS's referral to the DOR. *See* DE 1-2 at 9–20. Nor does McGinnis claim that he could not have properly asserted his theory at that stage. An **opportunity** for a meaningful hearing as to a given right is all that due process requires, and exactly what the University gave McGinnis.

McGinnis, perhaps, suggests that UK denied him an "impartial" decisionmaker. DE 1-2 at 6. Even if true, McGinnis could have pursued his current theory via the Commonwealth's judicial appeal process. *See* KRS 13B.140 (authorizing judicial review of agency orders). The fact that Plaintiff declined to utilize that mechanism does not render it any less an "opportunity to be heard at a meaningful time and a meaningful manner[.]" *Matthews*, 96 S. Ct. at 902. Stated otherwise, Plaintiff does not plausibly allege, as to CKMS's collection referral, that Defendant denied him the "fundamental requirement of due process[.]" *Id.* Thus, Plaintiff failed to plead a viable § 1983 claim, and Defendant is entitled to dismissal of Count Two.

*Time Bar*

The § 1983 claim is also time barred.[3] For § 1983 actions, federal courts borrow forum states' personal injury statutes of limitation. *See Wilson v. Garcia*, 105 S. Ct. 1938, 1949 (1985); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990). Here, the relevant statute is the one-year limitation period provided by KRS 413.140. *Ham v. Marshall Cty., Ky.*, No. 5:11-CV-11, 2012 WL 5930148, at *3 (W.D. Ky. Nov. 27, 2012) (citing *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990)). That one-year deadline thus applies to Count Two.

Pursuing tolling, McGinnis claims that he suffers from continuing Fourteenth Amendment violations via ongoing DOR collections. DE 1-2 at 6 ("Defendant violated and continues to violate . . . Plaintiff[']s Constitutional Rights of due process."). The Court is unconvinced. The continuing violations doctrine permits tolling of a limitations period under three conditions:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern[.] . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). The doctrine is seldom applicable. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (The "Sixth Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to §

---

[3] While a statute of limitations defense often is not appropriate for consideration as part of a 12(b)(6) motion, such defense may prevail "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008); *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554–55 (6th Cir. 2012) ("A motion to dismiss can be premised on an affirmative defense . . . if 'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" (internal citation omitted)). Further, McGinnis's *pro se* status does not foreclose the possibility of him pleading himself out of court. *Cf. Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.").

1983 actions."); *see also Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014) ("Courts have been 'extremely reluctant' to extend the continuing-violation doctrine beyond the context of Title VII[.]" (internal citations omitted)). The Court sees, and Plaintiff offers no valid basis for its application in this matter.

First, the alleged DOR collections are not "the defendant's" conduct. *See Tolbert*, 172 F.3d at 940. Second, Plaintiff does not allege that DOR's collection practices are themselves unconstitutional as a procedural due process matter. Rather, McGinnis's due process claim centers on the administrative proceeding and DOR referral. *See* DE 1-2 at 6. Subsequent non-party collection efforts stemming from the disputed hearing and referral do not, on this record, amount to plausibly alleged CKMS constitutional violations, continuing or otherwise. *See Tolbert*, 172 F.3d at 940 (A "continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation[.]" (internal citations omitted)). Thus, the collections provide no tolling basis.

"[A] statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action[.]" *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (citing *Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1984)). A "plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* McGinnis knew or had reason to know of the full factual basis for his current Fourteenth Amendment claim no later than 2014, when Plaintiff received the decision denying his challenge to the delinquent account and notice of the referral. *See* DE 1-2 at 9. Plaintiff's 2018 state-court complaint came far too late. The latest conceivable deadline, given pleading content, expired in 2015. Thus, Count Two is time-barred.

*Immunity*

Finally, Eleventh Amendment and state sovereign immunity bar all of Plaintiff's claims.

> It is well-settled that a suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment. . . . When suit is brought against a public agency or institution, and/or its officials, the application of the Eleventh Amendment turns on whether said agency or institution can be characterized as an arm or alter ego of the state, or whether it should be treated instead as a political subdivision of the state.

*Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) (internal citations and quotation marks omitted).[4] Under "§ 1983, the University, as an arm of the State, is immune from suit under the Eleventh Amendment" and sovereign immunity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *Hutsell*, 5 F.3d at 999 ("That UK is considered an arm of the state under state law and not merely a political subdivision is apparent from the statutory scheme which governs it."). When an incorporated entity is created for and "exists only to serve" an immune governmental agency in performing a governmental function, the entity "derives its immunity status" from the parent agency. *Autry v. W. Kentucky Univ.*, 219 S.W.3d 713, 719 (Ky. 2007); *see also Comair, Inc. v. Lexington-Fayette Urban Cty. Airport Corp.*, 295 S.W.3d 91, 103 (Ky. 2009) ("Ultimately, the Corporation has the same governmental function and parent as the Board. Thus, it enjoys the same immunity as the Board."); *Hutsell*, 5 F.3d at 1002 ("[A]lthough not dispositive, state law immunity is given great weight by federal court[s] in determining Eleventh Amendment immunity[.]" (citation omitted)). Plaintiff explicitly pleaded that CKMS is no more than "an internal collection agency for the University[.]" DE 1-2 at 1. Further, McGinnis makes no attempt to distinguish CKMS's "situation from that in *Autry* . . . , where a state university formed a nonprofit entity for a specific and limited purpose, the nonprofit corporation existed only to serve the university, and

---

[4] Notably, Plaintiff does not seek injunctive relief. *See* DE 1-2 at 7.

the nonprofit corporation derived its immunity status through the university." S*hadrick v. Hopkins County, Ky.*, 805 F.3d 724, 748 (6th Cir. 2015). The Court, given UK's recognized immunity, and CKMS's acknowledged relationship and role as a component unit, finds that Defendant is entitled to the University's immune status. McGinnis did not address or grapple in any way with CKMS's form and function within the immunity theory.[5] The defense substantiated the corporate foundation and originating documents, along with the entity's status as a component unit of the University. *Cf. Malibu Media, LLC v. Steiner*, 307 F.R.D. 470, 474 (S.D. Ohio 2015) ("[T]he Court may take judicial notice of Plaintiff's registration with the Ohio Secretary of State without converting Defendant's motion into one for summary judgment, as the registration is a public record." (citing *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2007)). Plaintiff has not plausibly countered the immunity construct articulated by Defendant.

In truth, Plaintiff does not materially develop **any** contrary argument to Defendant's immunity claim. *See* DE 19 at 13–15 (argument) & DE 21 at ¶ 4 (response).[6] McGinnis pleads that "Defendant is not entitled to immunity[.]" DE 1-2 at 6. However, Plaintiff's legal conclusions are not entitled to a presumption of truthfulness. *See Papasan*, 106 S. Ct. at 2944. Further, McGinnis's claim is wholly inconsistent with the pleaded facts and applicable law. *See Hutsell*, 5 F.3d at 1002 (affirming dismissal of 1983 claims "against the UK Board of Trustees and its employees in their

---

[5] A prominent problem throughout is Plaintiff's refusal to meet the arguments of the defense. Although the Court is open to liberal construction for McGinnis's benefit, the Court will not mine for or make arguments to preserve a party's claim, *pro se* or not.

[6] Plaintiff does offer a few desultory comments regarding this topic in his unauthorized surreply, *e.g.*, "Plaintiff is not even sure Defendant is entitled to any kind of immunity[.]" DE 24 at ¶ 2. McGinnis also contends, without support, that Defendant's failure to follow unspecified "strict rules" forecloses reliance on immunity. *Id.* Plaintiff's vague assertions are, again, not properly before the Court and, in any event, do nothing to rebut Defendant's well-supported motion. *Cf. Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) ("It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." (internal citations and quotation marks are omitted)).

official capacity" on immunity grounds); *Comair, Inc.*, 295 S.W.3d at 104 (LFUCG agency defendants were "covered by sovereign immunity" and could not "be held liable in tort."); *see also Will v. Michigan Dep't of State Police*, 109 S. Ct. 2304, 2309 (1989) (A "State is not a 'person' within the meaning of § 1983[.]"); *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001) (Sovereign immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity."). Consequently, the Court finds that immunity bars all of Plaintiff's claims and will grant Defendant's motion, on terms.[7]

*Remand Denial*

Finally, the Court explains its denial of Plaintiff's request for remand of the state claims in the event of federal claim rejection. *See* DE 24 at ¶ 4. Given the common factual field, the Court, under 28 U.S.C. § 1367(a), has supplemental jurisdiction over the Kentucky claims. However, after a "district court has dismissed all claims over which it has original jurisdiction" the exercise of supplemental jurisdiction is not mandatory. 28 U.S.C. § 1367(c). The Court's discretion in this area is broad, but "bounded by constitutional and prudential limits on the use of federal judicial power." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (hereinafter *Musson*). Specifically, the Court must account for "judicial economy, convenience,

---

[7] Immunity-based dismissals are more properly considered dismissals for lack of jurisdiction, rather than failure to state a claim. *See F.D.I.C. v. Meyer*, 114 S. Ct. 996, 1000 (1994) ("Sovereign immunity is jurisdictional in nature."). The jurisdictional underpinnings of the Court's state-claim rulings compel dismissals without prejudice on Counts 1 and 3. *See Carmichael v. City of Cleveland*, 571 F. App'x. 426, 435 (6th Cir. 2014) ("[D]ismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice."); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("Our cases, too, recognize that dismissals for lack of jurisdiction should generally be made without prejudice. . . . In the final analysis, the district court's dismissal order[, relying on sovereign-immunity grounds,] was premised on a lack of jurisdiction, and the court gave no explanation for turning its back on the heavy presumption that a dismissal for lack of jurisdiction will be without prejudice.").

fairness, and comity" concerns. *Carnegie-Mellon Univ. v. Cohill*, 108 S. Ct. 614, 619 (1988). If all federal claims are dismissed pretrial, "the balance of considerations usually will point to dismissing" or remanding state claims. *Musson*, 89 F.3d at 1254–55. Indeed, "a 12(b)(6) dismissal of the touchstone claims" creates "a strong presumption in favor of dismissing supplemental claims." *Id.* at 1255. Put differently, a pleading-stage rejection of federal claims "precludes the exercise of supplemental jurisdiction over any remaining claims" absent "unusual circumstances." *Id.* Nonetheless, the Court, for several reasons, finds that the particular case circumstances are atypical and warrant resolution, rather than remand of Plaintiff's claims.

First, the remand presumption can be overcome where, as here, it is "absolutely clear how the pendent claims can be decided." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Musson*, 89 F.3d at 1256 (citing *Wright*). Plaintiff, long on notice of Defendant's state law immunity theory, *see, e.g.*, DE 1-3 at 15 (Dec. 20, 2018, State Court Motion to Dismiss), offers nothing more than speculation and conclusory allegations to rebut Defendant's well-supported motion. Thus, the Court finds retention of such claims, for purposes of immunity-based dismissal, appropriate because "the correct disposition of the claim is 'so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law.'" *See Wright*, 29 F.3d at 1252 (citation omitted).

Judicial economy and fairness concerns further counsel against remand. Plaintiff has been litigating (and the University or its subsidiary agency have been defending) the subject events, in one form or another, for more than 3 years. *See, e.g.*, DE 1-3 (2016 State Court Complaint). Plaintiff's tactics smack of willful delay.[8] McGinnis, at every turn, has angled to duck a merits

---

[8] To briefly summarize, CKMS, in December 2018, moved to dismiss McGinnis's state claims in Fayette Circuit Court. DE 1-3 at 17. McGinnis, after full briefing, *see id.* at 48 (Response) & 73 (Reply), but prior to a ruling, moved to amend his pleading to add a federal claim. *Id.* at 98. CKMS

evaluation[9] of his immunity-barred claims. As the Court previously stated, at some point "Plaintiff must face the Rule 12 hurdle to proceed with this matter[.]" DE 18 at 2. That time is now. The Court finds that it would be decidedly unfair to Defendant and ill serve judicial economy to permit Plaintiff to continue dodging merits consideration of his clearly **barred**[10] state claims. Thus, fairness and judicial economy interests confirm the Court's conclusion that a substantive ruling on Plaintiff's state claims is, in the unique case circumstances, appropriate.

## III. CONCLUSION

For all these reasons, the Court **ORDERS** as follows:

---

agreed to the amendment and to pass the fully briefed motion from the state docket. *See id.* at 121 (Agreed Order). Defendant then removed and again sought dismissal. DE 6 (Motion). McGinnis, rather than responding under Rule 12 and professing a desire to "keep the case in state court[,]" pursued remand or, alternatively, time to amend his complaint to delete any federal claims. DE 8 (Motion). The Court granted McGinnis an amendment extension and, noting the potential mooting effect of the amendment, denied CKMS's Rule 12 motion without prejudice. *See* DE 11 (Order). Plaintiff then "decided not to amend" his complaint. *See* DE 16 (Motion to Proceed). The Court thus reinstated the previously denied dispositive motion that now stands fully briefed. *See* DE 18 (Order); *see also id.* at 2 ("Plaintiff—by requesting amendment, then failing to amend, and by failing to comply with the Court's Local Rules regarding address provision—has already delayed this matter significantly."). In addition to the dilatory impact of Plaintiff's conduct, the Court notes that McGinnis's use of "manipulative tactics" calculated to "defeat removal and secure a state forum" independently counsels in favor of retention. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004) (providing, as exemplary, "deleting all federal-law claims from the complaint and requesting that the district court remand the case") (citation omitted); *see also Carnegie-Mellon Univ.*, 108 S. Ct. at 622–23 ('If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.").

[9] Plaintiff's eleventh hour, wandering focus on the need for a CKMS "audit" is illustrative. None of Plaintiff's theories encompasses that type of accounting relief, yet most of McGinnis's responsive argument centers on the claimed need for a vast, institutional audit as part of the litigation. The Court rejects the foray.

[10] The nature of CKMS's dispositive defense further militates against McGinnis's remand request. Sovereign immunity is not merely a defense to liability, it "precludes the maintaining of any suit" absent waiver. *Yanero*, 65 S.W.3d at 517. As the Commonwealth's highest court has described it, immunity "refers to the right to be free, not only from the consequences of the litigation's results, but from the burden of defending oneself altogether." *Lexington-Fayette Urban Cty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004).

1. The Court, given the immunity basis, **GRANTS** CKMS's Motion to Dismiss (DE 19) **IN PART**—the Court, for obvious reasons, denies the request to hold the matter in abeyance;[11]

2. The Court **DISMISSES** Plaintiff's Count Two **WITH PREJUDICE**;

3. The Court **DISMISSES** Plaintiff's Counts One and Three **WITHOUT PREJUDICE**; and

4. The Court will enter a separate Judgment.

This 15th day of October, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge

---

[11] The Court sees no logical reason to hold this case while *Univ. of Kentucky v. Moore*, No. 2018-SC-000193 pends at the Kentucky Supreme Court. That decision may impact the overall validity of DOR collections by UK, but this case targets a different part of the medical bill process. Further, even if *Moore* might tangentially bear on the discrete improper referral aspect of Count Two, the result of the subject appeal is irrelevant to the outcome of Defendant's motion. The Court, in evaluating McGinnis's § 1983 claim under 12(b)(6), already assumed, for argument's sake, that Kentucky law prohibits such DOR referrals. Plaintiff nonetheless failed to plausibly allege a procedural due process violation.